UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    v.

CHENGXUAN HAN,

    Defendant.
_____/

Case No. 25-cr-20479
Hon. Matthew F. Leitman

## UNITED STATES' SENTENCING MEMORANDUM

The defendant, Chengxuan Hun, smuggled biological material into the United States and lied to Customs and Border Patrol (CBP) agents when questioned about her shipments. She has proclaimed her innocence despite overwhelming evidence of her guilt, lied to authorities and minimized the role of others in her crimes. She has, in sum, accepted no responsibility for her actions. Under these circumstances—and in considering § 3553(a) factors such as the need to adequately punish the defendant, promote respect for law, and deter future misconduct (by Ms. Han and others who might seek to smuggle biologicals into the United States)—the Court should sentence Ms. Han to six months in prison (the top of the advisory guideline range), followed by a one-year term of non-reporting supervision.

I.      **Factual Background**

The defendant, Chengxuan Han, is a citizen of the People's Republic of China (PRC) who obtained her master's degree and is currently pursuing a Ph.D. from the College of Life Science and Technology in the Huazhong University of Science and Technology (HUST) in the PRC. PSR ¶ 9. HAN received an offer to conduct research as a visiting scholar at a University of Michigan Laboratory (UM LAB)— beginning in June 2025—pursuant to a J-1 Visa. *Id*. Ms. Han's research focuses on C-Elegans (roundworms) and how roundworms detect sensory cues such as touch, light, chemicals and temperature and how such cues are processed.

Beginning in September 2024, Han shipped three separate packages of concealed or mis-manifested biological material destined for individuals at the UM LAB. PSR ¶ 10. The consignees of the packages are referred to as Recipient 1 and Recipient 2. *Id*. Ms. Han knew that each of the three shipments needed to be properly invoiced to reflect the true nature of the biological material contained in the shipments. Ms. Han knowingly and intentionally failed to properly invoice the the biological material contained in the shipments, intending to defraud the United States by avoiding its customs laws. *Id*.

**SHIPMENT 3 (Count One)**: On March 1, 2025, Ms. Han was listed as the shipper for a package manifested as a "Doc," which was sent to Recipient 2 at an address in Ann Arbor, Michigan. PSR ¶ 11. An inspection of the package yielded a

2

book with an envelope hidden inside the pages of the book. *Id*. The envelope contained a handwritten note, written on filter paper, with 28 shapes and a labeling scheme with each shape. *See* images *infra*. The handwritten note stated:

> Hello! This is a fun letter with interesting patterns. I hope you can enjoy the pleasure within it.

The "pleasure within it" was not actually a game—instead, it was coded language, informing the recipient that Ms. Han was transmitting hidden biological material related to the lab's research. Indeed, nomenclature of the labels used by Ms. Han are consistent with biological materials related to C. elegans research. *Id*. An FBI laboratory analysis later confirmed that the filter paper contained plasmids—mammalian expression vectors of varying functions. *Id*.





**SHIPMENT 2 (Count Two)**: On September 24, 2024, Ms. Han shipped a package addressed to Recipient 1 at the same Ann Arbor residence. PSR ¶ 11. The shipment, which was seized by CBP on or about September 29, 2024, was falsely manifested by Han as containing "plastic plates." *Id*. However, an inspection revealed eight petri dishes containing what appeared to be biological material. *Id*. Pictures of two of the petri dishes are set forth below:

4



The FBI tested the petri dishes and confirmed that they contained C. elegans with genetic modifications. *Id*. Laboratory images from two of the petri dishes are set forth below.



5

**SHIPMENT 1 (Count Three)**: On September 18, 2024, Ms. Han shipped a parcel falsely manifested as a "Doc" to Recipient 1 at the same Ann Arbor, Michigan residence (the exact same way she mis-manifested Shipment 3, above). PSR ¶ 11. This package was seized by CBP on or about September 23, 2024, and an inspection revealed a biological sample which appeared to be plasmids labeled as PRK5. *See Image, infra*. PRK5 is a gene or protein related to C. Elegans (Ms. Han's area of research). An FBI laboratory analysis later confirmed that the material was a plasmid—a mammalian expression vector. *Id*.



Ms. Han falsely manifested each of these shipments. Her knowledge and willfulness are obvious. She fraudulently labeled Shipments 1 and 3 the exact same way – as a "doc." In Shipment 3, she hid the filter paper containing dried

biological plasmids inside an envelope that she tucked inside a book, telling the recipient to enjoy the "pleasure within it [the filter paper]." We also know that she wiped her cellphone before flying to the United States, evidence of her consciousness of guilt. ECF No. 1, PageID.15. And, as is discussed below, the lies (and the ever-evolving story) that Ms. Han told to CBP officers when she arrived in the United States further supports her willful and malicious smuggling of biological material into the United States.

**Han's Lies After Arriving in the United States:** On June 8, 2025, Ms. Han arrived at the McNamara Terminal of the Detroit Metropolitan Airport (DTW). PSR ¶ 14. After her arrival, CBP officers conducted a secondary inspection and interview, with a Mandarian translator present. *Id*. During this interview, CBP officers asked Ms. Han if she had sent packages to Recipient 1. Ms. Han lied, stating, "No, I don't remember sending him anything." *Id*. After CBP officers brought up specific packages, Ms. Han changed her story, admitting that she had sent packages on occasion. *Id*. When asked what the packages contained, Ms. Han lied again, stating that she could not recall. *Id*. CBP officers pressed Ms. Han again, asking if she had sent a package manifested as plastic plates; Ms. Han admitted that she had. *Id*. CBP Officers asked what was in the plates, and Ms. Han lied yet again (and continued to maintain her lie) stating that it was a non-biological water solution, specifically sodium oxide and Agar. *Id*.

7

CBP Officers transitioned to Shipment 3—showing her a picture of Recipient 2. PSR ¶ 15. Ms. Han initially claimed that she did not know Recipient 2, but subsequently changed her story. The officers asked Ms. Han if she had shipped documents to Recipient 2. Ms. Han stated that she had. CBP officers asked why she had sent a book to Recipient 2. Ms. Han replied that she found the book interesting, but she could not remember what book she sent, or why it was interesting. And, Ms. Han denied that there was anything inside the package, other than the book.

Knowing that Ms. Han was lying, the officers asked if there was an envelope hidden inside the book; Ms. Han claimed that she did not understand what the officers meant. After the officers demonstrated placing an envelope inside a legal pad, Ms. Han finally admitted that she had, in fact, sent an envelope in this manner. Ms. Han was asked what was inside the envelope. Ms. Han lied, claiming that the envelope only contained a "picture game"— one that had no biological materials on it. *Id*. However, after further questioning by CBP officers, Ms. Han admitted that the note contained research material, specifically plasmids. Ms. Han continued to maintain, however, that it was just a game. *Id*.

And, when subsequently questioned by FBI agents, Ms. Han stated that she lied during her CBP interview because she believed being truthful (about the hidden envelope) could possibly implicate Recipient 2. ECF No. 1, PageID.15.

## II.   Objection to the Advisory Guideline Range

The Probation Department calculated an advisory guideline range of 0 to 6 months, based on a net offense level of 4 and a criminal history category of I. This included a 2-level reduction for "acceptance of responsibility" under USSG § 3E1.1(a). The government respectfully objects to this 2-level reduction.

The Sentencing Guidelines provide for a two-level reduction for acceptance of responsibility when a defendant "clearly demonstrates acceptance of responsibility for h[er] offense . . ." USSG § 3E1.1(a); *United States v. Tucker*, 925 F.2d 990, 992 (6th Cir. 1991). It is Ms. Han's burden to prove facts entitling her to such a reduction by a preponderance of the evidence." *Tucker*, 925 F.2d at 991.

The Sentencing Guidelines expressly provide that a "defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." *See* USSG § 3E1.1 (Application Note 3); *Tucker*, 925 F.2d at 993 (affirming denial of a 2-level acceptance reduction in the context of an *Alford* plea, explaining that "[t]he Sentencing Guidelines expressly provide that simply entering a guilty plea will not entitle a defendant to a section 3E1.1 reduction" and that the "sentencing hearing transcript . . . does not indicate any facts entitling Tucker to such relief."); *United States v. Cardona*, 454 F. App'x 420, 423-24 (6th Cir. 2011) ("A defendant

9

is not automatically entitled to the two-level decrease simply because she pleads guilty.").

And, while a no-contest or *Alford* plea does not categorically preclude an acceptance of responsibility reduction, a defendant, like Ms. Han, must still prove, by a preponderance of the evidence, that she accepted responsibility for her actions. *See Tucker*, 925 F.2d at 991; *see also United States v. Sand*, 989 F.2d 501, *4 (6th Cir. 1993) ("Though an *Alford* plea does not necessarily preclude a two-level reduction in the offense level for acceptance of responsibility, a defendant must clearly demonstrate acceptance of responsibility for his criminal activity in a timely fashion."). And, courts throughout the country have recognized that, while not precluded under § 3E1.1(a), no-contest and *Alford* pleas are, "as a general proposition, inconsistent with the acceptance of responsibility and is a relevant factor to consider when determining a sentence." *United States v. McGill*, 128 F. Supp. 3d 863, 868, 870-71 (E.D. Pa 2015) (citing cases); *United States v. Dones-Vargas*, 2021 WL 5547701, at *9 (D.S.D. Aug. 20, 2021) (collecting cases).

*United States v. Sand*, 989 F.2d 501 (6th Cir. 1993) is instructive. In *Sand*, the Sixth Circuit held that the defendant, who entered an *Alford* plea, "failed to demonstrate an acceptance of responsibility." *Id*. at *4. The Court explained:

> Pursuant to his *Alford* plea to Count Two of the Superceding Information, Sand pleaded guilty to violating 18 U.S.C. § 1512 but refused to admit any of the underlying facts. Moreover, he and his attorney

10

>repeatedly informed the district court judge that Sand entered the plea agreement solely because it offered the appellant the best opportunity for an early release from incarceration.

*Id*.

The Court should respectfully arrive at the same result here. During her change of plea hearing, Ms. Han did not admit any of the underlying facts and expressly maintained her innocence. And, she and her attorneys have repeatedly informed the Court that the sole reason she entered a no-contest plea was that if offered her the best chance at a quick release from incarceration and ultimate return to China. *Sand* is directly on point.

This result is also supported by Application Note 1 to USSG § 3E1.1. There, the Sentencing Commission identified relevant factors to be considered when determining whether a defendant has clearly demonstrated acceptance of responsibility. Ms. Han satisfies none of the factors. Most significantly, she has not "truthfully admit[ed] the conduct comprising the offense(s) of conviction." *Id*. (Application Note 1, Factor A). Nor did she voluntarily terminate or withdraw from the criminal conduct or associations or assist authorities in any way in the investigation of her shipments (or other shipments going to her scheduled location of research at the University of Michigan). *Id*. (Application Note 1, Factors B and E).

11

### III. <u>Sentencing Recommendation</u>

Congress provided in 18 U.S.C. § 3553(a) the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

The most relevant factors to Ms. Han's case are discussed below. Based on these factors, a sentence at the high end of the guidelines, would be "sufficient, but not greater than necessary, to comply with the purposes of" sentencing set forth in 18 U.S.C. § 3553(a). *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

#### A. **Sentencing Guidelines Range**

The Probation Department calculated the defendant's guideline range as 0 to 6 months based on a net offense level 4 and criminal history category I. PSR ¶ 56. The government objected to 2-level reduction for acceptance of responsibility. This objection will, however, not change Ms. Han's guideline range.

### B. Sentencing Factors

Smuggling biological material into the United States (through the mail) is obviously a serious offense. Ms. Han intentionally mis-manifested biological material to avoid scrutiny by Customs and Border Patrol agents, undermining our country's border security and compromising national security measures.

Ms. Han's conduct was, moreover, not isolated or accidental. She sent multiple shipments of biological material to researchers at the University of Michigan over a lengthy period of time. In one instance, she hid the material in a book and included a coded message for the recipient, illustrating both sophistication and a complete lack of respect for this country's customs laws.

And, when confronted by CBP agents at the airport, Ms. Han lied about and/or minimized her misconduct. Ms. Han has been offered multiple chances to truly accept responsibility for her actions. She has declined to do so at every turn, including when entering her no-contest plea. Her repeated lies and failure to accept responsibility indicates one thing—she has not been deterred, and a significant sentence needs to be imposed to provide just punishment, to protect the public, and to appropriately deter her and others from repeating this type of smuggling misconduct in the future.

## **CONCLUSION**

For the reasons stated above, the government asks the Court to impose a sentence at the high end of the guidelines (6 months), followed by a one-year term of non-reporting supervision.

Respectfully Submitted,

Jerome F. Gorgon Jr.
United States Attorney

*s/Douglas C. Salzenstein*
Douglas C. Salzenstein
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
313-226-9196
doug.salzenstein@usdoj.gov

Dated: September 5, 2025

## **CERTIFICATE OF SERVICE**

    I hereby certify that on September 5, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will provide notice to: Sara Garber and Benton Martin, Attorneys for Defendant.

                                      *s/Douglas C. Salzenstein*
                                      Douglas C. Salzenstein
                                      Assistant United States Attorney